**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**ST. CROIX DIVISION**

| | | |
|---|---|---|
| **JED JOHNHOPE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLINE FAWKES, in her individual Capacity and her Official Capacity as the Supervisor of Elections, and RAYMOND WILLIAMS, in his individual capacity and as the Chairperson of the Board of Elections** | : | **NO. 26-16** |

**MEMORANDUM OPINION**

**Savage, J.** **October 26, 2026**

Plaintiff Jed JohnHope is an aspiring candidate for Congressional Delegate to the U.S. House of Representatives, representing the Virgin Islands. To get his name on the primary election ballot, he had to collect signatures from qualifying constituents. He began collecting signatures six hours before the submission deadline. He obtained 27 of the required 200, and his application was rejected. He now claims the defendants, Virgin Islands election officials, violated local law and the Constitution by refusing to apply a Virgin Islands statutory provision that gives aspiring candidates three days to cure defects in their nomination petitions.

We conclude the provision does not apply to JohnHope because his facially incomplete petition did not meet the baseline threshold for review and opportunity to cure.

**Background**

The deadline to file nomination papers for JohnHope's candidacy was on May 19, 2026, by 6 p.m.[1] Under 18 V.I.C. § 381(b), "[w]here the nomination is for an office to be

[1] *See* Defs.' Counterstatement of Material Facts ["Defs.' CMF"] ¶ 3, ECF No. 43-1.

filled by the vote of the electors of the territory at large, the nomination paper shall be signed by a least 100 qualified electors of each of at least two election districts." Under 18 V.I.C. § 382, a nomination petition must be accompanied by an affidavit for each election district setting forth that "to the best of the affiant's knowledge and belief, the signers are qualified electors of the territory of the Virgin Islands, or of the election district, as the case may be."

JohnHope began collecting signatures roughly six hours before the submission deadline.[2] When he timely submitted his nomination papers to the Election System Office on St. Croix, they contained three signatures from the St. Croix Election District and 24 from St. Thomas-St. John Election District.[3]

To meet section 381(b)'s requirements, JohnHope's application had to have at least 200 signatures—100 from the St. Croix Election District and 100 from the St. Thomas-St. John Election District. He contends that upon submitting his nomination papers, two Board of Elections employees informed him that his insufficient number of signatures was not an issue because he would be given three days to collect the remaining required signatures under 18 V.I.C. § 411(c).[4] Section 411(c) provides that "[w]hen a nomination petition . . . is found to be defective the candidate shall be notified immediately by special messenger with the reason or reasons therefore," and gives the

[2] Defs.' CMF ¶¶ 1–2.

[3] *See* CMF ¶¶ 2, 4–5, Defs.' Ex. 7 at 2.

[4] *See* Pl. Jed JohnHope's Mot. & Mem. for Partial Summ. J. ["Pl's Summ. J. Br."] at 2 ¶ 3, ECF No. 24. To the extent any Board of Elections employee told JohnHope section 411(c) applies to him, the advice is *ultra vires* and has no legal effect. We also note that although JohnHope claims to have relied on that advice, he has not established that the reliance was the cause of his disqualification. He has not established that, absent the advice, he would or even could have obtained the remaining 173 required signatures in time.

candidate three days to submit "a new, valid petition[.]" *Id.* If the new petition is not filed within the three days, the candidate "shall be disqualified for nomination or election." *Id.*

JohnHope was not issued a Notice of Defect and given three days to secure the remaining required signatures under section 411(c). Rather, upon receiving his nomination papers, defendant Caroline F. Fawkes, the Supervisor of Elections, asked Virgin Islands Attorney General Gordon C. Rhea for a legal opinion regarding whether the failure to meet the minimum signature threshold in 18 V.I.C. § 381(b) required disqualification.[5] Rhea advised that where nomination papers did not meet the minimum signature requirement imposed by 18 V.I.C. § 381(b), Fawkes was authorized to disqualify JohnHope.[6] Acting on this legal advice, Fawkes notified JohnHope, by letter dated May 26, 2026, that he had been disqualified because his nomination papers did not meet the minimum signature requirement.[7] On May 29, 2026, when JohnHope attempted to submit additional signatures, the Board of Elections office rejected them.[8] JohnHope subsequently appealed his disqualification to the Board of Elections,[9] which upheld his disqualification.[10] JohnHope was informed of the outcome of his appeal via letter dated June 18, 2026, from defendant Raymond Williams, the Chairman of the Board of Elections.[11]

---

[5] Defs.' CMF ¶ 6.

[6] *Id.* ¶ 8.

[7] *Id.* ¶ 9.

[8] Pl.'s Summ. J. Br. at 3 ¶ 7; Defs.' Resp. to Pl.'s Statement of Material Facts ["Defs.' Resp. to Pl.'s SMF"] ¶ 7, ECF No. 43-1.

[9] Pl.'s Summ. J. Br. at 4 ¶ 8; Defs.' Ex. 5.

[10] Defs.' CMF ¶¶ 14–15.

[11] *See* Defs.' Ex. 4.

JohnHope argues that under section 411(c), he should not have been disqualified but instead issued a Notice of Defect and given three days to collect the necessary signatures. He contends that other aspirants were given cure notices under section 411(c) despite initially submitting applications that lacked the requisite number of "qualified" signatures. He alleges that the defendants violated Virgin Islands law by failing to provide him a notice of defect and opportunity to cure. He also contends they deprived him of his constitutional rights to procedural due process and equal protection.[12]

JohnHope moves for summary judgment, arguing the undisputed material facts establish the defendants violated 42 U.S.C. § 1983 because their application of 18 V.I.C. § 411(c) violated his constitutional rights to due process and equal protection.[13] We will deny the motion and grant summary judgment *sua sponte* for the defendants because JohnHope's claim fails as a matter of law.[14]

---

[12] *See* Pl.'s Summ. J. Br. at 5–9.

[13] JohnHope originally asserted a claim for "Intentional Violation of Federal Statute [48 U.S.C. § 1712(a)]" that was not addressed in the motion for summary judgment. *See* Pl. Jed JohnHope's Verified Compl. ¶¶ 44–49, ECF No. 1. He has since amended his complaint to drop that additional claim. *See* Pl. Jed JohnHope's Verified Second Am. Compl. ["2d Am. Compl."], ECF No. 18-1. Thus, our grant of summary judgment for the defendants disposes of this case.

[14] Federal Rule of Civil Procedure 56(f)(1) provides that, "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant[.]" The Third Circuit Court of Appeals recognizes an exception to the notice requirement when three conditions are met: (1) the point at issue is purely legal; (2) the record was fully developed; and (3) failure to give notice does not prejudice the party. *Cont'l Cas. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 22-1087, 2022 WL 17101226, at *2 (3d Cir. Nov. 22, 2022) (citing *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 219 (3d Cir. 2004)). The parties' dispute is purely legal—JohnHope's allegations turn solely on the interpretation and application of 18 V.I.C. § 411(c). The record is sufficiently developed for us to decide the issues. The material facts are undisputed and supported by evidence submitted by both parties. The lack of notice is nonprejudicial. JohnHope has fully briefed his motion for summary judgment and submitted the evidence he contends supports his claim. The defendants have submitted their own briefing and evidence in opposition.

**Analysis**

18 V.I.C. § 411(c)

Section 411(c) does not apply to JohnHope. He did not submit a "nomination petition" for the purposes of section 411(c) because his submission did not meet the baseline requirements for a nomination paper under section 381(b). He needed 200 signatures. He had 27.

Section 411(c) is titled "Examination of nomination petitions, papers, and certificates." Other candidates were issued notices of defect because their nomination petitions were facially complete.[15] They had more than the required signatures, and attached the required affidavits stating that the signatures were all supplied by qualified voters.[16] Thus, they reached the "examination" stage at which latent issues in their seemingly qualifying applications could be identified and cured. It was apparent at submission that JohnHope's nomination petition was insufficient. It did not warrant "examination" under section 411(c).

Under JohnHope's reading of section 411(c), an aspiring candidate could return a completely blank application and automatically be given a three-day extension on the statutory deadline.[17] That is not how the statute works. Section 411(c) provides limited relief for applicants who completed the baseline nomination requirements under section

[15] Defs.' CMF 16–24; Defs.' Exs. 9–12.

[16] *See* Defs.' Exs. 9–12.

[17] JohnHope contends that the defendants' reading of section 411(c) is unreasonable because it withholds the opportunity to cure for a candidate who submits less than the minimum of total required signatures, but allows it for a candidate who meets the signature requirement by filling in random names to meet the required number. But, JohnHope overlooks the affidavit requirement. That requirement prohibits knowing submission of random signatures. If an applicant submits an application with the requisite number of signatures and an affidavit attesting that all the signatures are from qualified voters, the application necessarily meets section 381(b)'s requirements on its face. By contrast, an application with less than the minimum number of total signatures, even accompanied by an affidavit, is automatically insufficient.

381(b). JohnHope did not meet that threshold. Therefore, the defendants did not violate section 411(c) by refusing to review his facially incomplete submission and provide him notice and opportunity to cure.

Procedural Due Process

JohnHope argues the defendants deprived him of his right to procedural due process in failing to apply the notice and cure provision of section 411(c),[18] and failing to provide him "opportunity to appear and challenge" his qualification or an "independent, impartial body" on appeal.[19]

The defendants' failure to apply section 411(c) was not a violation of JohnHope's right to due process. As we have explained, he had no statutory right to the section 411(c) review and cure process because he never submitted a completed application under section 381(b) triggering section 411(c) review. As for his disqualification appeal to the Board of Elections, he was represented by legal counsel, who articulated his challenges to disqualification in a letter to the Board of Elections.[20] The Board met on June 8, 2026 to review JohnHope's disqualification, and voted to uphold it based on 18 V.I.C. § 381(b).[21]

JohnHope argues the defendants violated his due process rights under *Mathews v. Eldridge*,[22] by failing to hold a hearing before stripping him of his "entitlement to ballot

---

[18] 2d Am. Compl. ¶ 20. JohnHope does not contend that the signature requirement itself wrongfully prevented his candidacy. Nor could he. The signature requirement "is an eminently reasonable nondiscriminatory restriction" on ballot access. *McClafferty v. Fawkes*, No. 26-cv-31, 2026 U.S. Dist. LEXIS 202196, at *12 (D.V.I. Sept. 8, 2026).

[19] Pl.'s Summ. J. Br. 7–8.

[20] *See* Defs.' CMF ¶¶ 12–13; Defs.' Ex. 5.

[21] *See* Defs.' CMF ¶ 14; Defs.' Ex. 4.

[22] 424 U.S. 319 (1976). In *Mathews*, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest

placement."[23] We disagree. JohnHope's alleged deprivation of ballot access was not caused by the defendants' refusal to apply section 411(c) or a lack of due process in his appeal. It was caused by his failed eleventh-hour attempt to file a complete application.

Equal Protection

As for his equal protection argument, JohnHope has not identified similarly situated comparators who received different treatment. He has not pointed to any aspirant who, like him, lacked the requisite number of "qualified" voter signatures under section 381(b) and section 382, and received a deficiency notice and an opportunity to cure under section 411(c).

The aspirants he identifies who were given the opportunity to cure under section 411(c)[24] are not comparators. He contends they also lacked the required number of "qualified" voter signatures because, upon review, many of the signatures in their applications turned out to be from electors who were not officially "qualified" to vote pursuant to separate provisions of the Virgin Islands Code. Thus, he contends, they also lacked the requisite minimum number of qualified signatures, yet were given a chance to cure.[25]

Unlike JohnHope, each of the "comparators" submitted timely nomination papers with over 100 signatures from each election district, accompanied by affidavits stating that

---

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 334–35. The "procedures used" by the defendants did not deprive JohnHope of his spot on the ballot. His failure to submit a facially complete petition did.

[23] *See* Pl.'s Summ. J. Br. at 6–8.

[24] *See id.* at 9.

[25] *See id.*

the signatures were of qualified electors.[26] So, at the time of submission, the signatures in their applications were from "qualified" electors for the purposes of sections 381(b) and 382, warranting further review for potential defects under section 411(c). JohnHope's signatures were not. His application was incomplete on its face, and not subject to the review and cure process for latent defects.

Thus, JohnHope has failed to establish that the defendants' refusal to apply section 411(c) to him while applying it to others constituted an equal protection violation.

## Conclusion

For the above reasons, we will deny JohnHope's motion for summary judgment and grant summary judgment in favor of the defendants on JohnHope's claim.

---

[26] Defs.' CMF 16–24; Defs.' Exs. 9–12.